Territorial Law Library

IN THE SUPERIOR COURT OF GUAM
TERRITORY OF GUAM

SUPERIOR COURT
OF GUAM

2012 MAY 23 PM 1: 52

| | | |
|---|---|---|
| HRC GUAM CO., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL CASE NO. CV0504-08 |
| | ) | |
| vs. | ) | |
| | ) | **FINDINGS OF FACT** |
| BAYVIEW II L.L.C., | ) | **AND CONCLUSIONS OF LAW** |
| | ) | |
| Defendant. | ) | |

This matter came on for Bench Trial on May 14 and 15, 2012, before the Honorable Judge Elizabeth Barrett-Anderson. On April 4, 2012, the Court issued a bench ruling on several motions by the parties, including HRC's motion for partial summary judgment regarding interpretation of the term "leasable" square feet. The Court ruled as a matter of law that the language of the lease was unambiguous, and its terms would be interpreted for their ordinary meaning and within the terms of the lease agreement as a whole.

The parties, in an effort to calculate CAM charges based on the Court's interpretation of "leasable" square feet came to disagreement on the characterization of numerous locations within the BCC floor plan for Phases I, III, and IV. At hearing on May 2nd the parties submitted to the Court sketches in preparation for trial reflecting each party's understanding of the Court's ruling on "leasable" square feet. The sketches represented differing opinions on the Court's ruling. In an effort to clarify and assist the parties in preparation for jury trial, the parties entered an agreement for a bench trial in order for the Court to take evidence "specifying the location and square footage of hotel areas, common areas and leasable areas in Phase I, III, and IV of the complex." (Stipulation and Order For Bench Trial, dated May 4, 2012). The Court having taken evidence, arguments of the parties, now renders the following Findings of Fact and Conclusions of Law, To the extent that Findings of Fact as stated may be considered Conclusions of Law,

[Type text]

they shall be deemed Conclusions of Law. Similarly, to the extent that matters expressed as Conclusions of Law may be considered Findings of Fact, they shall also be deemed Findings of Fact.

The Court now makes the following findings:

A. **"LEASABLE"** area includes:

1. PHASE III

   a. *Roof Floor Plan* leasable area (5,475 s.f.). Def. Trial Ex. #31, "Bayview Exs. 8 and 15, Phase III", Chart 18.

   b. *Undisputed leasable areas.* Def. Trial Ex. #31 "Bayview Exs.8 and 15, Phase III", Chart 8(a) and 8(b).

2. PHASE IV

   a. *1ˢᵗ Floor Level*:

      i. Restaurant area currently known as the Palm Café, its kitchen, service and customer reception area. Def. Trial Ex. #31, "Bayview Ex.6, Phase IV", Charts 23/25, designation (4).

      ii. Lobby area currently referred to as the Bamboo Bar. Def. Trial Ex. #31 "Bayview Ex.6, Phase IV", Charts 23/25 designation (5).

   b. *Ground/Plaza Level*

      i. Exterior pavilion and walkway fronting Pale San Vitores Drive. This area is included within the commercial complex of the BCC, and is

[Type text]

compatible with leasable space.[1] Def. Trial Ex. #31, "Bayview Ex.6, Phase IV", Chart 26, designated (4) and (3).

    ii. All partitioned room areas, including the area currently occupied by hotel administrative offices, but not to include corridors/walkways or hotel housekeeping room. Def. Trial Ex. #31, "Bayview Ex.6, Phase IV", Chart 26, designated (5), (6), (7), (8), (9), (10), and yellow.

**B. "COMMON AREA"**

1. PHASE I. *Parking and Roof.* All area contained in Phase I parking: ground floor, second floor, and roof area. Def. Trial Ex. #31, "Bayview Ex.7, Phase I" Charts 7 and 30.

2. PHASE III

    a. *Basement Floor Plan.* Parking and service area. Def. Trial Ex. #31, "Bayview Exs. 8 and 15, Phase III", Chart 8.

    b. *Roof Floor Plan.* Roof area, excluding leasable space above described in ¶A(1)(a). Def. Trial Ex. #31, "Bayview Exs. 8 and 15, Phase III", Chart 18.

    c. *Undisputed common areas.* Def. Trial Ex. #31, "Bayview Ex. #8 and Ex. # 15 Phase III", Charts #8(a) and #8(b).

3. PHASE IV

    a. *1st Floor Plan.*

---

[1] The pavilion lends itself to customer tables and chairs for varying vendors, such as the current tenant Jungle Java. The exterior walkway lends itself to various stage functions, but also can be leased to local entrepreneur umbrella vendors selling cultural wares to tourists. Both areas reasonably lend themselves to leasable space.

[Type text]

     i. Pedestrian pass through between Phase I (south) and Phase III (north) entrances. Def. Trial Ex. #31, "Bayview Ex.6, Phase IV", Charts 23/25, designated (3).

     ii. Walkway/corridor area off the hotel front desk, eastward to the Palm Café, adjacent to elevators, restrooms and Bamboo Bar. Def. Trial Ex. #31, "Bayview Ex.6, Phase IV", Charts 23/25, designated (3).

     iii. All service/elevators, facility service room, restrooms, and stairwells. Def. Trial Ex. #31, "Bayview Ex.6,Phase IV", Charts 23/25, designated (2) and (3).

     iv. Two tier step down lobby area. Def. Trial Ex. #31, "Bayview Ex.6, Phase IV", Charts 23/25, designated (1).

b. *2nd Floor/Mezzanine.* Walkway/corridors adjacent to Sakurai Bar. Def. Trial Ex. #31, "Bayview Ex.6, Phase IV", Charts 19/20/22 as amended.

c. *Ground/Plaza Level.* Service elevator, stairwells, electrical rooms, service areas, walkway/corridors, lower lobby entry, public elevators, escalator. Def. Trial Ex. #31, "Bayview Ex.6, Phase IV", Chart 26, designated (2).

d. *Basement Level.* Loading dock areas, including corridors/walkways, stairwell, and elevators services loading dock area, but does not include corridors/walkways immediately adjacent to exclusive hotel space as described in ¶ C(1)(e)(ii) below. Def. Trial Ex. #31, "Bayview Ex.6, Phase IV", Chart 28, designated (2).

e. *Roofs.* HRC and Lobby roof areas.

[Type text]

**C. EXCLUSIVE HOTEL AREA** includes:

1. <u>PHASE IV</u>

   a. *1st Floor*. Hotel front desk, administrative offices, hotel storage and communications room. Def. Trial Ex. #31, "Bayview Ex.6, Phase IV" Charts 23/25, designated yellow.

   b. *Upper Hotel Floors.* All hotel floors above 1st Floor, including elevator areas, guest rooms, ballrooms, conference space, etc.

   c. *Ground/Plaza Level.*

      i. Parking. Def. Trial Ex. #31, "Bayview Ex.6, Phase IV", Chart 26, designated (1).

      ii. Housekeeping, hotel reception, luggage room and service desk. Def. Trial Ex. #31, "Bayview Ex. #6 Phase IV", Chart 26, designated yellow.

   d. *Basement Level.*

      i. Parking. Def.Trial Ex. #31,"Bayview Ex.6, Phase IV", Chart 28, designated (1).

      ii. Hotel cafeteria, administrative offices, locker room, laundry room, storage areas, and carpenter room. Def. Trial Ex. #31, "Bayview Ex. 6, Phase IV", Chart 28, designated yellow.

   e. *Hotel Roof Top.*

/ / /

/ / /

[Type text]

**D. HARDROCK LEASED SPACE**

The balcony areas immediately outside HRC's "theme restaurant" on the 2nd Floor Mezzanine Level and designated as "terrace" in the exhibit attached to the lease agreement are included within HRC's leased area.

<strong>CONCLUSIONS OF LAW</strong>

The Court construes any uncertainty in the language or provisions of the Lease against Bayview. 18 G.C.A. §87120. Technical words are herein interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense, or used in a technical sense. 18 G.C.A. §§ 87110 and 87111. Finally, the Court interprets the Lease as a whole in order to give clear meaning and effect to every part, where reasonable. 18 G.C.A. §87107.

1.      CAMC – HRC's argument that CAMC does not include exterior spaces under industry standards is not supported by the language of the Lease read as a whole. The Lease provides that costs for operating common areas include: "cleaning, repairing and/or treating exterior building surfaces; cleaning exterior windows surfaces; repainting; …landscaping … and maintenance of landscape areas." [HRC Trial Ex. "A", pg. 9, Section 4(c)(2)(d)(iii)]. The fact that Bayview is inconsistent in its application of CAMC to exterior spaces for the various Phases of the BCC does not alter Bayview's obligation under the Lease. HRC Trial Ex. A, Section 13(a).  While HRC's interpretation that based on industry standards CAMC should only relate to interior spaces shared in common by other tenants, the Lease speaks otherwise. Exterior spaces are included as common areas.  HRC Trial Ex. A, Section 13(b)(1) through (5).

2.      ROOF – "Landlord shall in all cases retain the right to control and prevent access thereto…provided however, that nothing herein contained shall be construed to prevent such

[Type text]

access to persons with whom Tenant normally deals with in the ordinary course of business." Exhibit "C" of Lease, "BCC Operating Rules and Regulations" ¶31. There is no access by the general public to any roof area. Roof areas are available only to tenants of the BCC. Based on the Court's finding of exterior application of CAMC, the roof areas are, therefore, within the definition of "common areas."

4. LOBBY - The Court does not find this area reasonably compatible with "leasable" area. It provides hotel guests, BCC tenants, BCC shoppers and the general public with access to the hotel recreational facilities, hotel exterior grounds, and public beaches. More importantly this area serves a general public purpose for fire and other emergency access for the entire BCC making it unsuitable for lease purposes. The evidence is that although the Outrigger Hotel uses this area for hotel functions and receptions[2], it is also available to all BCC tenants and their guests. Unlike Phase IV ground and basement parking security, the Outrigger Hotel does not maintain a strict monitoring of lobby usage. The Court agrees that it fits well within the term "quasi-public" lobby of the Lease.

5. PARKING – On January 13, 2012 the Court heard Bayview's partial summary judgment to dismiss HRC claim for breach of lease regarding the "83 parking slots." The Court ruled that as a matter of law HRC's had no claim for partial eviction under its Second Claim for Relief, Partial Eviction, and this claim was dismissed with prejudice. The Court further ruled that HRC, having abandoned lost profits, was entitled to pursue only nominal damages if it can successfully prosecute its claim for breach of contract for the "83 parking slots" under its First

---

[2] The Outrigger Hotel has conference and ballroom facilities on the Second Floor of the Hotel.
[Type text]

Claim for Relief; Breach of Lease.[3] The Court has not, and does not make a ruling as to breach as this is a matter of fact for the jury.

The Court finds that the entire parking area encompassing the Basement and Ground floors of Phase IV is within the exclusive control of the Outrigger Hotel. This is support by the deposition testimony of Ms. Charlene Goo, Outrigger Hotel General Manger[4] which was read into evidence. A sign designating the covered parking area as for the exclusive use of registered hotel guests and patron had been posted at the security entrance. Ptf. Trial Ex "B." Bayview further designated the Phase IV parking for the exclusive use of the Outrigger Hotel in its March 17, 2000 parking addendum agreement to the Lease.[5] Def. Trial Ex "3". The sign was removed recently, unfortunately, present removal of the sign does not remove its exclusive use characterization under the Lease. No part of the Phase IV parking area is deemed common area.

**SO ORDERED**: _____MAY 2 3 2012_____ .

_____
**HONORABLE ELIZABETH BARRETT- ANDERSON**
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 2 3 2012

Persey M. Angoco
Deputy Clerk, Superior Court of Guam

---

[3] Damages have been limited to nominal damages by the dismissal with prejudice of ¶15.
[4] Deposition Transcript of Charlene Goo, Bayview Marked Deposition Transcript For Use at Trial, filed May 11, 2012, at pages 27, 59 and 67.
[5] "The Plaza level parking of Phase IV shall be used exclusively by Outrigger Guam Resort." at paragraph #6.

[Type text]